BENJAMIN ARMSTRONG, Appellant, *v.* JACOB DUBOIS, Respondent.

LEVY ON PROPERTY EXEMPT FROM EXECUTION. PRINCIPAL AND AGENT. ATTORNEY AND CLIENT; LIABILITY OF CLIENT FOR UNLAWFUL ACTS OF ATTORNEY APPROVED BY HIM. EFFECT OF STIPULATION CONCERNING EVIDENCE ON TRIAL.

The sheriff, with the plaintiff and his attorney, being present at the levy under an execution, and the former having levied upon property exempt from execution, the owner (execution defendant) desired him to release it, and was referred to the plaintiff (defendant in this action), who, in turn, referred to his attorney, and he ordered the officer to keep possession of the property. In an action against the plaintiff in that suit, for the taking of this property, it was *held,*

That the sheriff is the agent of the plaintiff in seizing the property, and the directions of plaintiff's attorney, in his presence, are the same as though given by himself, for he must be deemed to have sanctioned and approved them.

Where, in an action against a plaintiff in a former suit, for the taking of property exempt from execution, the plaintiff in this latter action stipulates, that he will admit upon the trial—

1. That the sheriff received no directions from the defendant personally in reference to the levy and sale;

2. That the defendant took no part in the said levy and sale, and had no portion of the proceeds of the sale personally,—

*Held,* that these admissions were not inconsistent with the fact of defendant's liability, where it was proved, upon the trial, that the acts complained of were done by the sheriff under the direction of defendant's attorney, and in defendant's presence, and with his knowledge and approval.

It is not material what became of the goods, nor that the defendant neither received them nor the proceeds arising from their sale.

*William C. Hornfager,* for the appellant.

THIS action was brought to recover damages for the taking and carrying away certain property of the plaintiff, claimed to be exempt by law from levy and sale under execution, and also to recover damages for the taking, detaining and carrying away the useful and necessary beds, bedding and wearing apparel of himself and family, and injury thereto. The defendant denies,

1. That he took or carried away the goods and chattels as set forth in the complaint.

2. That he took and carried away the beds, bedding, clothing and wearing apparel of plaintiff and his family, and kept possession thereof, as alleged in the complaint; and denies that the plaintiff sustained any damages to any amount whatever.

It is alleged and admitted by the answer, that defendant recovered judgment, issued execution thereon, and levied upon all the property of the plaintiff, including all the wearing apparel, beds and bedding of his family. That about $250, in value, was returned after suit was brought, and the balance sold under defendant's execution.

Plaintiff's entire cause of action is therefore fully admitted in the pleadings, both for the property taken and sold under execution, as well as the taking and detaining the wearing apparel of plaintiff and his family, if the articles taken were exempt by statute.

I. Upon the allegations in the complaint and admissions in the answer, the plaintiff was entitled to recover upon proving the nature of the property taken — to show that they were such articles as are specifically exempt by statute from levy and sale under execution; and further, that defendant had also taken, in addition, other useful and necessary household furniture, to the value of $150. The court therefore erred in dismissing the complaint, even upon the testimony permitted to come in, the value having been proved. The court also erred in allowing the stipulation to be read, and dismissing the complaint, thereby excluding all further evidence to be given before plaintiff had rested his case. (15 Johns. 210; 3 Hill, 237; 5 Wend. 301.)

II. It appears by the stipulation offered in evidence, that a motion had been made to change the venue to Westchester county, on the ground of convenience of witnesses. It therefore does not affect the admissions in the pleadings in any respect, as the defendant would not be allowed to contradict his own admissions.

The first subdivision admits the recovery of the judgments, at the times and for the amounts stated in the answer.

The second admits that executions were issued thereon to

the sheriff of Westchester county, and that William P. Littel was deputed to execute the writs; also, that Daniel H. Littel, who was then sheriff of said county, had not personally received any directions, instructions or communications from defendant personally. The sheriff having received the execution and appointed a special deputy, it was his duty, as such sheriff's special deputy, to execute the writ. In accordance therewith, he proceeds with the plaintiff in the execution, and the attorney enters the plaintiff's house, where the property is pointed out on which the levy is or has been made, and the plaintiff in execution, his attorney and the special deputy show the defendant in execution the writ, and inform him that they have come to take possession of the property. A release of the exempt property, of the sheriff's special deputy, is at once demanded. He is referred to the plaintiff in execution, and by him referred to his attorney, who replied, " he should release nothing, but would sell him out neck and heels."

In the third subdivision, it is admitted what was set up in the answer: that said special deputy sold the goods under said execution, without having received any directions or instructions from the defendant personally. But it is in evidence, by the proof, that he suffered it to be done in his presence by his attorney and agent, without giving directions to the contrary. The acts of his agents are his acts; he is, therefore, equally liable as if he had given personal, specific directions.

In the fourth subdivision, it is admitted that the defendant took no part in said levy or sale, and had no portion of the goods under his control, and received no portion of the proceeds of the sale personally. But the defendant was present, looked on and consented, and suffered the same to be done. The defendant having caused the execution to be issued, being present at the levy, he had no right to control the property, as it was in the possession and under the control of the sheriff, who was liable to both parties for its safe keeping. That having caused the plaintiff's property to be sold and converted into money, the sheriff was responsible to

him for the full amount of the execution. The execution in law is satisfied, and whether he neglected to take or receive the proceeds from his attorney, is not material to this issue. The plaintiff's cause of action was complete, and commenced before the sale, so that the fourth subdivision is immaterial.

III. The defendant's answer states, that at the time of the levy there was a large amount of costly and valuable property in the possession of plaintiff, although incumbered by mortgage, which defendant claims was fraudulent, and more than enough to pay his execution without resorting to exempt property. Therefore, the taking the exempt property was not only a wanton, but a malicious act on the part of the defendant.

It appears that the defendant came there with his attorney and the special deputy, appointed to carry out their malicious purposes. All three being together, the plaintiff applies to the special deputy to release his exempt furniture and clothing — he refers him to the defendant as principal — the defendant refers him to his attorney. The defendant thereby delegated his power to his attorney and agent, and all the acts, both of the attorney and special deputy, were the acts of the defendant.

It is a well settled principle of law, that the principal is responsible for the acts of his agent, whether done by direct authority, or ratified after the act has been done. In this case the direction was given in his presence, and the acts of his agents ratified at the same time; the defendant is, therefore, liable. (See *Coates* v. *Daly*, 2 Com. 517; *Morgan* v. *Varick*, 8 Wend. 587; *Stewart* v. *Wells*, 8 Bar. 77; *Fonda* v. *Van Horn*, 15 Wend. 631; *Davis* v. *Newkirk*, 5 Duer, 92.)

IV. There was an evident attempt on the defendant's part to avoid the responsibility of this malicious act, and throw it upon irresponsible parties. But the circumstances occurring while executing the trespass, made it entirely unsuccessful. As he appointed his agents on the spot, consented to what his attorney directed and their special deputy did, he ratified and confirmed all their acts.

The defendant was the owner of the premises; at the expiration of plaintiff's lease he left as required by the lease. All the property was, therefore, wholly left in the possession of the defendant, except what he was permitted to take in a market basket and carpet bag. He thus retained all the plaintiff's and his family's wearing apparel and exempt furniture, in addition to the magnificent and costly furniture alluded to in the answer, all for the paltry sum of $253.16, and alleged to have been subsequently sold.

V. The court may, in a proper case, relieve a party from a stipulation made in a cause. (*Beck* v. *Zamont*, 13 How. 23; *Fitch* v. *Hall*, 18 id. 314.)

The general policy of the law is opposed to sharp and summary judgment when the party whose rights are in jeopardy has no opportunity to be heard. (*People* v. *Medical Society*, 32 N. Y. 196.)

The stipulation should be construed and considered, taking into account all the circumstances, the time and circumstances under which it was made, together with the pleadings and evidence.

*R. W. Van Pelt,* for the respondent.

After this cause was at issue, a motion was made to transfer it to the Supreme Court and change the place of trial to Westchester county, for the convenience of witnesses. To obviate the said motion, and to retain the said cause in the Court of Common Pleas, the attorney for the plaintiff, Armstrong, stipulated and agreed to admit the facts that the defendant, in his moving affidavits, alleged that he could prove by the witnesses residing in Westchester county, and thereupon the stipulation read in evidence on the trial was executed and delivered by the plaintiff's attorney to the attorney for the defendant.

I. The stipulation admits, in the most positive terms, that the defendant, Dubois, had nothing whatever to do with the alleged trespass, personally or otherwise; that he took no part in said levy and sale — had no portion of said goods

under his control, and received no portion of the proceeds of the sale. These facts constitute a perfect defense. Before the plaintiff can recover in this action, he must show that the alleged trespass was committed by the direction of Dubois, or that he indemnified the sheriff or ratified his act by assuming control over the property levied upon, or accepting the proceeds of the sale. (*Allen* v. *Crary,* 10 Wend. 349; *Fonda et al.* v. *Van Horn,* 15 id. 631.)

II. The only exception taken in the case was to the dismissal of the complaint. The stipulated facts constituting a perfect defense, it was the duty of the court to order a dismissal of the complaint, which is equivalent to a nonsuit. (5 How. 325; *Bostwick* v. *Abbott,* 40 Barb. 331.)

MASON, J. When the plaintiff's evidence was in, there can be no doubt his case was made out. He was entitled to recover. The evidence showed, that the defendant having his execution in the hands of a deputy of the sheriff, went in company with such deputy, and his attorney in the suit and execution, Van Pelt, to the house of the plaintiff. Some one of them pushed open the door and the three entered the house. The deputy showed the plaintiff the execution and told him he had come to take possession of the property. The execution was in favor of Dubois and against the plaintiff. The sheriff told this in the presence of Dubois. Armstrong, the plaintiff, asked the deputy to release his exempt property, and the deputy referred him to Dubois as the principal. Armstrong then made a request of Dubois, and Dubois referred him to his attorney, Van Pelt, and Armstrong then asked Van Pelt to release his exempt furniture and clothing; and Van Pelt replied that he should release nothing, *but would sell him out* neck and heels, and ordered the sheriff to keep possession of the property. The sheriff obeyed the instructions. The defendant, Dubois, heard all this, but did not personally interfere further by word or deed. He remained silent and made no reply, and must be held to have sanctioned and approved what his attorney, Van Pelt, said and did. This was enough to make him liable. Any one

who unlawfully intermeddles with another's goods, although there be no manual interference therewith, as exercising an authority over them in defiance or exclusion of the owner, is liable for a conversion. (Cow. Trea. §§ 566, 4th ed. by Tracy, 1856.) The deputy sheriff is the agent of the plaintiff in seizing the property, and when the plaintiff directs or is present with his attorney, and allows him to do so, and refers the officer to him for directions, and the attorney gives them in his presence, it is precisely the same as if the plaintiff gave them himself, for he must be deemed to have sanctioned and approved the acts of his attorney. (*Stewart* v. *Wells*, 6 Barb. 79.) He is responsible for the directions and acts of his attorney (*Newberry* v. *Lee*, 3 Hill, 623), and the rule seems to be, that wherein the attorney conducts the suit in such a way as to be liable to an action of trespass himself, his client is also liable. (*Barker* v. *Braham*, 3 Wils. 368, 376; *Bates* v. *Pelling*, 6 Barn. & Cres. 38; *Brown* v. *Feeter*, 7 Wend. 301; 3 Hill, 525; Leigh's Nisi Prius, 1479.)

The question, whether here was evidence of conversion against the defendant, certainly should have been submitted to the jury, for where the evidence of a conversion is slight, the jury are proper judges of the sufficiency thereof. (*Harger*, 4 Watt, 418; Leigh's Nisi Prius, 1479.)

The only remaining question is, whether the stipulation put in evidence by the defendant, contains admissions which take away the plaintiff's case, and deprive the plaintiff of his casue of action.

It is proper to consider in this connection the circumstances under which this stipulation was given. The defendants made a motion to transfer this cause of action to the Superior Court, and to change the place of trial to the county of Westchester, on the ground of the convenience of witnesses, and to obviate said motion the plaintiff's attorney gave this stipulation, in which the plaintiff agreed to admit on the trial—

1. That the sheriff received no directions, instructions, or communications from this defendant personally, in reference to the levy or sale under said executions, or either of them.

2. That the said William P. Little, as such special deputy, levied upon and sold the goods, under the said two executions, of this defendant and said Ackerman and Deyo, without having received any directions or instructions so to do from this defendant personally.

3. That this defendant took no part in this said levy and sale, and had no portion of the proceeds of the sale personally.

There is an affirmation, contained in brackets, at the bottom of each of said three admissions, that no implication should be drawn from the form of said admissions; that the defendant had given such direction and instruction to said deputy through his attorney, agent, or any other person; or that the defendant had done, received or suffered any of the things named in the third clause, by any person on his behalf. These negative affirmations, embraced in brackets, at the end of each clause of the stipulation, make no other claim and can have no other than to repel any implications being drawn from the stipulation itself against the defendant as to any of the things therein referred to, and could never have been intended to deprive the plaintiff of the right to make proof in regard to them. I do not think this stipulation should be held to overthrow the plaintiff's case made by his proof. All there is in the first two clauses of the stipulation is an admission that, personally, the defendant did not give any directions or instructions to the deputy in reference to the said levy and sale. This is quite consistent with the case made by the plaintiff's evidence. He did not give any directions or instructions, personally, but his attorney did, in his presence, and he, by his silence, approved it.

And I cannot regard the admission in the third clause as necessarily admitting away the plaintiff's case.

The admission is, first, that the defendant took no part in the said levy and sale. This may all be true, and yet the plaintiff's case made by his evidence be true. Very likely the defendant did not take any part in the levy or sale.

The evidence does not show when the levy or sale was made. He may have done just what the plaintiff's evidence proves

he did, and yet not have taken any part in the levy or sale. He was asked to release from the levy the plaintiff's exempt property, and turned the plaintiff over to his attorney, Van Pelt. This, certainly, was not taking part in the levy, and there is no evidence that he was present or took any part in the sale. Nor is there any pretense in the case that he, personally, had any portion of the goods, or that he had received any of the proceeds of the sale. His attorney may have them. At any rate it is quite immaterial what has become of them.

The judgment should be reversed and a new trial granted.

CLERKE, J. (dissenting). The stipulation unqualifiedly admits, that the defendant took no part in the levy and sale ; had no portion of the goods under his control, and received no portion of the proceeds. No proof was given, or offered, to show, that the alleged trespass was committed by the direction of the defendant, that he indemnified the sheriff, or in any way ratified his acts.

The judgment should be affirmed with costs.

Judgment reversed.