## KNAPP *v.* SMITH *et al.*

After the statutes of 1848 and 1849, and independently of ch. 90 of 1860, a married woman might acquire the title to real or personal property by buying the same upon credit, and no interest therein would pass to her husband whether she had antecedently any separate estate or not. If the vendor would take the risk of payment, the transfer was perfect.

Having thus obtained property, she could manage it by the agency of her husband or any other, and hold the profits and increase to her separate use.

So held where the wife of an insolvent in 1851 bought cattle which had been his from his assignees, giving her promissory notes for the price, and purchased the farm, for the conveyance of which he had an executory contract, which was abandoned, she mortgaging it as security for the price, and subsequently employing her husband to manage the farm, the case being free from fraud.

The decision in *Allen* v. *Crary* (10 Wend., 349), that replevin lies by the owner of chattels against one who had no possession or connection there-

with other than to direct a sheriff to levy an execution in his favor
upon them, approved and affirmed. ·

Evidence by an assumed principal that her husband was acting as her agent,
and the inquiry of another witness whether the wife had been in pos-
session of a farm on which she and her husband lived, are not objection-
able on the ground of involving legal conclusions.

APPEAL from the Supreme Court. The action was in the
nature of replevin for one colt and seven yearling heifers.
The defendants justified under a judgment and execution in
a justice's court, in favor of one Phelps, against Horace B.
Knapp, the husband of the plaintiff. It appeared on the trial,
before a referee, that the plaintiff was married in 1835, and
that her husband became insolvent in 1851, and then made an
assignment of his property, in trust for the payment of his
debts, and that he continued insolvent to the time of bringing
the action. In 1853, John Smith conveyed to the plaintiff in
fee, the farm on which they then lived, and which they had
continued to occupy ever since. The husband had contracted
to purchase it several years before, and had made a small pay-
ment; but Smith, the vendor, swore that the contract was
abandoned, and that the conveyance to the plaintiff was not
in performance of it, but was an independent sale to her, and
she gave him a mortgage for the purchase price, $1,200.
About the same time, the plaintiff purchased eight cows and
one mare from the assignees of her husband, for which she
gave her note for $300. The colt and five of the heifers, for
which the suit was brought, were the increase of the mare
and cows, and the other two heifers were given to the plaintiff
by a person other than her husband. She, with her husband
and family, continued to occupy the farm, after the deed to
her. The finding of the referee upon this point, was: "That
her husband has carried on the farm and worked the same,
and that the family of the plaintiff have been supported from
the products of said farm ; that the same has been managed
and carried on in the name of the plaintiff, and that her hus-
band has acted as her agent." It was also found, that the
interest of the mortgage had been paid from the products of

the farm, and that the note given for the cows had been paid from the proceeds of the sale of some of them. She had no separate estate or property, prior to the purchase of the farm. The referee stated, as a conclusion of fact, that the plaintiff was the owner and in possession of the colt and yearlings, when they were seized, on the execution, by one of the defendants, who was a constable, by the direction of the other defendant. As matter of law, he found that the plaintiff was entitled to recover. Some exceptions to rulings in taking the testimony, are noticed in the opinion.

The judgment on the report having been affirmed at a general term, the defendants appealed, and the case was submitted on printed briefs.

*L. I. Burditt*, for the appellants.

*L. L. Bundy*, for the respondent.

DENIO, Ch. J. At common law, a married woman had a capacity to take real or personal estate, by grant, gift or other conveyance, from any person except her husband. But as to real property, the husband, where no trust was created, had an estate during the coverture, and during his life, if there was issue of the marriage; and the wife's personal estate, in the absence of a trust, vested in him absolutely, when reduced to his possession. The object of the statutes of 1848 and 1849 was to divest the title of the husband *jure mariti* during coverture, and to enable the wife to take the absolute title, as though she were unmarried. (Laws 1849, p. 528, ch. 375, § 1.) There is some difficulty in a married woman purchasing property, whether real or personal, on credit, arising out of the principle that she cannot make a contract for payment which will be binding upon her personally, according to the general rules of law ; but if the vendor will run the risk of being able to obtain payment of the consideration of the sale, the transfer will be valid, and no estate will pass to the husband, whether the wife had antecedently any separate estate or not. (*Darby* v. *Calligan*, 16 N. Y., 21.) It follows, that if the husband of the

plaintiff in this case, had been free from debt, there could be no legal objection to her title to the farm, or to the cows which were purchased by and conveyed to her, and she would have been entitled to hold and enjoy them, to her sole and separate use, in the same manner as though she were not under the disabilities of coverture. It would follow, that she could cultivate the land and manage the personal property by means of any agency which any other owner of property might employ, and that the produce thereof and the increase of the stock would be hers.

Where the husband is indebted and insolvent, as was the case here, there is generally more or less reason to suspect that such arrangements are adopted as a cover to disguise the substantial ownership of the husband and to defraud the creditors. Whether, in a given case, the transaction is sincere and *bona fide*, or a colorable device to cheat the creditors of the husband, is a question of fact, to be determined by the jury or other forum entrusted with decision of such questions. In this case, the referee has found the facts necessary to show title in the plaintiff to the property in question, and he has omitted to find that her title was infected with fraud. On the contrary, by stating that the acts of the husband were done in the character of the agent of the plaintiff, and that she was the owner of the cattle which were seized, on the execution, he has virtually negatived the allegation of fraud. It is not our duty or right to review the testimony, with a view to pass upon the correctness of his conclusion, and we, therefore, express no opinion upon the evidence in this case.

A point is made that the defendant Smith, who directed Moore, the constable, to make the levy, is not responsible, in this form of action, because, as it is argued, he never had the property in his possession. That precise question was decided against the defendant's position, in *Allen* v. *Crary* (10 Wend., 349). The defendant in that case had done nothing but to direct the sheriff to levy upon the property replevied, under an execution against a person who was not the owner, and a levy was accordingly made. The court held, that this was

a sufficient taking to enable the owner to bring replevin. I notice, that in an opinion at special term, before the late Judge WILLARD, the case of *Allen* v. *Crary* is made the subject of some criticism. But, in the case before Judge WILLARD, the defendant, who once had the possession of the property claimed, had actually transferred it and parted with the possession before the bringing of the action. (*Brockway* v. *Burnap*, 12 Barb., 347.) It did not become the duty of the court, therefore, to pass upon the effect of a levy upon execution where the process in replevin, as in this case and in *Allen* v. *Crary*, was served before anything more than making the levy had been done. I do not think the Revised Statutes, or the Code of Procedure, have made any change in the law as to the nature of the possession in the defendant which is required to warrant an action for the delivery of personal property. We therefore follow the case of *Allen* v. *Crary*, and hold that the action was properly brought against both defendants.

Two of the exceptions as to the admission of evidence are relied on. Trask, a witness examined for the plaintiff, was asked whether she had been in the possession of the farm since the deed to her, and the defendant objected that the inquiry called for an opinion on a question of law. The objection was overruled, and the witness answered that they, the plaintiff and her husband, had been on the place ever since. I do not perceive any well grounded objection to the question, but the answer was the statement of a simple matter of fact, and one in respect to which, upon the whole case, there was not the slighest question. Again, the plaintiff, while under examination on her own behalf, was asked by her counsel, "For whom did your husband do what business he did after you took the deed," &c. This was also objected to on the ground that it called for a legal conclusion. Her answer was: "I expected he was doing it for me." Legal considerations may, no doubt, be involved in a question of agency. But *prima facie* the inquiry whether a person engaged in a particular employment was doing business on his own behalf or as the agent of another, involves only the question of fact whether

he had been employed by·that other person, and it is, therefore, a competent question to be put to such person. The exceptions, I think, have no merit, and .there being nothing else in the case, the judgment must be affirmed.

WRIGHT, SELDEN, EMOTT, BALCOM and MARVIN, Js., concurred; ROSEKRANS, J., was for reversal, on the ground that a married woman, prior to the act of 1860, could not buy property for her separate uses, but under the acts of 1848 and 1849, could only take by gift or bequest.

Judgment affirmed.